IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 07-10918 CA 24

**07-21130**

**CIV-MARTINEZ**

CONRAD TIMPF, as Personal Representative
of the Estate of BRADLEY TIMPF, Deceased

    Plaintiff(s),

vs.

HILLSTONE RESTAURANT GROUP, INC.,
a Delaware corporation d/b/a HOUSTON'S,

    Defendant(s).

_____/

MAGISTRATE
BANDSTRA

## DEFENDANT'S NOTICE OF REMOVAL

The Defendant, HILLSTONE RESTAURANT GROUP, INC., ("Hillstone")

gives notice pursuant to 28 U.S.C. §§ 1332, 1441 and 1446 of removal to

the United States District Court for the Southern District of Florida the action

styled *Conrad Timpf, as Personal Representative of the Estate of Bradley D.*

*Timpf, Deceased vs. Hillstone Restaurant Group, Inc., a Delaware*

*corporation d/b/a Houston's*, Case No. 07-10918 CA 24, in the Circuit Court

of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

### THE STATE COURT ACTION

1.    On or about April 19, 2007, the Plaintiff, Conrad Timpf, as

Personal Representative of the Estate of Bradley D. Timpf,

Deceased ("Timpf") served the Complaint and Summons on CT

Corporation System, the registered agent in Florida for Hillstone.

2.    The Complaint contains one Count, which is based on the alleged

negligence of Houston's, a name under which Hillstone conducts

business, and this negligence allegedly resulted in the wrongful

death of Bradley Timpf.

Timpf vs. Hillstone
CASE NO. 07-10918 CA 24
Page 2

3.    Hillstone has not answered the Complaint, or filed any other response to the Complaint, in the State Court.  No orders have been served by the State Court on Hillstone.

## THE PARTIES - DIVERSITY JURISDICTION

4.    Hillstone was organized under the laws of Delaware with its principle place of business in Arizona. *See generally,* Complaint ¶ 5. (attached hereto as Exhibit 1)

5.    At all material times decedent, Bradley Timpf was a Florida domiciliary resident in Broward County, Florida. (See Complaint ¶ 3)

6.    At all material times Plaintiff, Conrad Timpf, is and was a Florida domiciliary resident in Broward County, Florida.  (See Complaint ¶ 2)

## NATURE OF SUIT AND AMOUNT IN CONTROVERSY

7.    Bradley Timpff visited the Houston's Restaurant located at 17355 Biscayne Blvd., North Miami Beach, Florida on or about December 10, 2006, when he was shot and killed by an unknown assailant.  (See Complaint ¶ 8)

8.    The Complaint alleges that the negligence of Hillstone resulted in the death of Bradley Timpf.

9.    The amount in controversy is greater than $100,000.00 exclusive of interest, costs, and any attorney fees. (See Complaint ¶ 1)

Timpf vs. Hillstone
CASE NO. 07-10918 CA 24
Page 3

## REQUIREMENTS FOR REMOVAL ARE SATISFIED

10.    Pursuant to 28 U.S.C. § 1441, this action is subject to
removal because the District Court has original jurisdiction
pursuant to 28 U.S.C. § 1332, as there is a diversity of
citizenship between the parties and the amount in
controversy exceeds $75,000.

   (a)    Diversity of Citizenship: The parties are citizens of
different States.    Both Plaintiff, Timpf and decedent
Timpf are and were citizens of Florida.   Defendant,
Hillstone, is a Delaware corporation with its principal
place of business in Arizona.

   (b)    Amount in Controversy: In the Complaint Plaintiff
alleges the amount in controversy is greater than
$100,000.00; thus the amount in controversy
exceeds the $75,000 jurisdiction threshold.

11.    Removal has not been made improper by activity in the
State Court, or the passage of time.   No orders in this
State Court case have been served on Hillstone.   Hillstone
has not answered the Complaint in the State Court.   This
Notice of Removal is being filed within thirty (30) days
after receipt of Plaintiff, Timpf's initial pleading, which was
served in or about April 19, 2007.

Timpf vs. Hillstone
CASE NO. 07-10918 CA 24
Page 4

   I HEREBY CERTIFY that true and correct copy of the foregoing was mailed on this ___30th___, day of April, 2007, to:

WM. Andrew Haggard, Esq.
Haggard, Parks, Haggard, & Lewis, P.A.
Professional Association First Floor,
330 Alhambra Circle,
Coral Gables, Fl  33134

                    VERNIS & BOWLING OF MIAMI, P.A.
                    1680 N.E. 135th Street,
                    North Miami, FL, 33181
                    (305) 895-3035; Fax:  (305) 892-1260

                    BY:  _____
                         Gary Gorday, Esq.
                         Florida Bar No:  293415

GG/CW/tj
4/24/07
0229/70439

☐ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR DADE COUNTY, FLORIDA
☐ IN THE COUNTY COURT IN AND FOR DADE COUNTY, FLORIDA

| DIVISION<br>☒ CIVIL<br>☐ CRIMINAL<br>☐ TRAFFIC | CLERK'S CERTIFICATE | CASE NUMBER<br>07- 10918 CA 01 (24) |
|---|---|---|

| PLAINTIFF(S)/PETITIONER(S)<br>Conrad Timpf, as personal Representative of the Estate of Bradley O. Timpf, Deceased | VS. DEFENDANT(S)/RESPONDENT(S)<br>Hillstone Restaurant Group, Inc., a Delaware corporation d/b/a Houston's, Defendant | CLOCK IN |
|---|---|---|

I, HARVEY RUVIN Clerk of the Circuit and County Court of the Judicial Circuit of Florida, in and for Dade County, DO HEREBY CERTIFY that the foregoing and attached page(s), numbered one to ___34___, inclusive, constitute(s) a true and correct copy of the ENTIRE FILE in that certain caused numbered ___07- 10918 CA01 (24)___ of said Court wherein

___Timpf, Conrad (Pers Rep)___ is/are ☒ Plaintiff(s)/☐ Petitioner(s), and

___Hillstone Restaurant Group___ is/are ☒ Defendant(s)/☐ Respondent(s),

as appears of record in the public files of my Office.

　　　　　In Witness Whereof, I have set my hand and affixed the Seal of the said Court at Miami, Dade County, Florida this ___April___ day of ___26___, 20_07_.

| HARVEY RUVIN<br>CLERK OF COURTS | BY:<br>_____<br>DEPUTY CLERK | (SEAL) CIRCUIT & COUNTY COURT<br>Dade County, Florida |
|---|---|---|



EXHIBIT
A



# CIVIL COVER SHEET

| | |
|---|---|
| ☒ | IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA |
| ☐ | IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA |

| DIVISION | CIVIL COVER SHEET | CASE NUMBER |
|---|---|---|
| ☒ CIVIL<br>☐ DISTRICTS<br>☐ FAMILY<br>☐ OTHER | | 07-10918 CA 24 |

| PLAINTIFFS | VS. DEFENDANTS | CLOCK IN |
|---|---|---|
| Conrad Timpf, as Personal Representative of the Estate of Bradley D. Timpf, Deceased, | Hillstone Restaurant Group, Inc., a Delaware corporation d/b/a Houston's, Defendant. | |

The civil cover sheet and the information contained here does not replace the filing and service of pleadings or other papers as required by law. This form is required by the Clerk of Court for the purpose of reporting judicial workload data pursuant to Florida Statute 25.075.  See instructions on reverse of this form.

## TYPE OF CASE (Place an "X" in one box only)

| Domestic Relations | Torts | Other Civil |
|---|---|---|
| ☐ Simplified dissolution<br>☐ Dissolution of Marriage<br>☐ Support - IV-D<br>☐ Support - Non IV-D<br>☐ UIFSA - IV-D<br>☐ UIFSA - Non IV-D<br>☐ Domestic Violence<br>☐ Other domestic relations | ☐ Professional Malpractice<br>☐ Products Liability<br>☐ Auto negligence<br>☒ Other Negligence | ☐ Contracts<br>☐ Condominium<br>☐ Real property/Mortgage foreclosure<br>☐ Eminent domain<br>☐ Challenge to proposed Constitutional Amendment<br>☐ Other |

| Is Jury Trial Demanded in Complaint  ☒ Yes  ☐ No | DATE: |
|---|---|

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated in the attached addendum pursuant to Administrative Order.  ☐ Yes  ☒ No

Signature of Attorney for party initiating action: _____

JUDGE:

CLK/CT 96 Rev. 10/06

Clerk's web address: www.miami-dadeclerk.com

YVONNE LOPEZ




IN THE CIRCUIT COURT OF THE 11ᵀᴴ
JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE
COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.: **07-10918 CA 24**

CONRAD TIMPF, as Personal Representative
of the Estate of BRADLEY D. TIMPF, Deceased,

        Plaintiff,

vs.

HILLSTONE RESTAURANT GROUP, INC., a
Delaware corporation d/b/a HOUSTON'S,

        Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, CONRAD TIMPF, as Personal Representative of the Estate of BRADLEY D.

TIMPF, sues Defendant HILLSTONE RESTAURANT GROUP, INC. for damages and alleges:

### Allegations as to all counts

1. This is an action for damages in excess of One Hundred Thousand Dollars exclusive of interest, costs and any attorney fees.

2. At all material times Plaintiff CONRAD TIMPF is and was a Florida domiciliary resident in Broward County, Florida.

3. At all material times the Decedent BRADLEY D. TIMPF was a Florida domiciliary resident in Broward County, Florida.

4. Plaintiff CONRAD TIMPF is the duly appointed personal representative of the Estate of his son, BRADLEY D. TIMPF.

 

5.   At all material times the Defendant, HILLSTONE RESTAURANT GROUP, INC., f/k/a Houston's Restaurants, Inc., is and was a Delaware corporation having its principal offices in Arizona.

6.   At all material times Defendant HILLSTONE RESTAURANT GROUP, INC., [hereinafter "HOUSTON'S"] is and was authorized to do and was doing business in Florida and had designated CT Corporation System, 1200 Pine Island Road, Plantation, Florida 33324 to serve as its registered agent in Florida.

7.   At all material times HOUSTON'S owned, operated, managed and controlled several Houston's Restaurants in South Florida including the Houston's Restaurant and its surrounding property located at 17355 Biscayne Blvd., North Miami Beach, Florida

8.   On or about December 10, 2006 the decedent, BRADLEY TIMPF was a lawful business invitee on the Houston's North Miami Beach premises when, after exiting the restaurant and walking to his vehicle parked in the Houston's parking lot, he was attacked, shot and killed in an attempted robbery, burglary gone bad, car-jacking, and/or some other senseless crime.

## COUNT ONE
## CLAIM OF NEGLIGENCE AGAINST HOUSTON'S

9.   At all relevant times Defendant HOUSTON'S, through its agents, servants and employees owed a duty to the public, its patrons and invitees to exercise reasonable care to keep and maintain its premises, including the parking lot where the instant tragedy occurred, in a condition reasonably safe for use by the public, its patrons and invitees, including BRADLEY D. TIMPF.  In particular, HOUSTON'S had a duty to take such precautions

Page 2 of 7



as were reasonably necessary to protect its patrons and invitees, including the Decedent BRADLEY D. TIMPF, from criminal attacks which were and/or should have been reasonably foreseeable.

10. At all relevant times Defendant HOUSTON'S, through its agents, servants and employees, knew or in the exercise of reasonable care should have known that its premises, including the parking lot and areas adjacent thereto, constituted and/or was within a high crime area, that there had been many prior criminal acts and attacks perpetrated on the public in those areas, and that criminal acts and attacks were reasonably likely to be perpetrated on the public and its invitees on its premises unless the Defendant HOUSTON'S took steps to provide adequate and proper security for them.

11. Defendant HOUSTON'S, did itself, or through its agents, servants and employees knew or in the exercise of reasonable care should have known that no individual, including the deceased BRADLEY D. TIMPF had it within his power to take the measures necessary to provide for his own security on the premises, including the parking lot.

12. At all relevant times the criminal attack and murder of BRADLEY D. TIMPF was reasonably foreseeable and the Defendant HOUSTON'S was in a superior position to appreciate such hazards and to take necessary steps to deter crime and prevent harm to the public, including but not limited to BRADLEY D. TIMPF.

13. At the above mentioned time and place, Defendant HOUSTON'S did itself and or by and through its agents, servants and employees breach its duty to exercise reasonable care for the safety and protection of the public and its business invitees such as BRADLEY D. TIMPF and acted in a careless and negligent manner through the following acts of

LAW OFFICES HAGGARD, PARKS, HAGGARD & LEWIS, P.A.
FIRST FLOOR, 330 ALHAMBRA CIRCLE, CORAL GABLES, FLORIDA 33134 • TELEPHONE (305) 446-5700

omission or commission:

a. Failing to provide adequate security for the users, customers and invitees of the Houston's Restaurant. This includes but is not limited to the following examples: failing to have an adequate number of trained security personnel and security guards and failing to have one or more uniformed, trained security guards patrolling the property during the hours of darkness, failing to have monitored security and surveillance cameras, failing to have a valet service and/or working trolley service to take patrons to their vehicles, failing to erect barriers that would limit access to its property and parking areas, except for the vehicular entrance/exit driveway, failing to erect barriers that would hinder a criminal perpetrator's ready escape, failing to have sufficient and/or properly working lighting, failing to maintain landscaping so that what little lighting was there would not be obscured by foliage and would better illuminate the grounds and the many dark and heavily foliated areas where persons may easily lurk and hide;

b. Failing to warn its patrons and invitees, including BRADLEY D. TIMPF, of the nature and character of the area and surrounding area in which the Houston's Restaurant was located, when HOUSTON'S knew or should have known that many criminal incidents against persons and property had occurred on and around its premises prior to the December 10, 2006 shooting and murder of BRADLEY D. TIMPF and that the nature of the area presented an unreasonable risk of harm in the absence of necessary security measures;

c. Failing to take measures that would guard against and otherwise adequately deter the conduct of criminal activity on its premises and in failing to be proactive in the prevention of crimes on its property and against its patrons; and failing to inspect and evaluate its property for dangerous conditions and security deficiencies;

d. Failing to implement and/or enforce adequate security policies, security measures and security procedures necessary to protect the patrons and invitees of HOUSTON'S restaurant in North Miami Beach, including BRADLEY D. TIMPF;

e. Failing to have or properly implement an overall security plan which would meet the known industry standards and customs for safety in the community; and

f. Additional acts of negligence not yet discovered.

14. It was foreseeable and/or should have been foreseeable to HOUSTON'S that its parking

lot was a likely place for crimes to occur, especially at night, and that given its lack of

LAW OFFICES HAGGARD, PARKS, HAGGARD & LEWIS, P.A.

FIRST FLOOR, 330 ALHAMBRA CIRCLE, CORAL GABLES, FLORIDA 33134 • TELEPHONE (305) 446-5700

security and safety measures, its patrons were made vulnerable and were subject to an unreasonable risk of harm from criminal activity and that it was only a matter of time before one of its patrons would be attacked, shot and killed in its parking lot at night.

15.    That HOUSTON'S did foresee the incidence of criminal activity on its property and specifically in its parking lot is evidenced by the fact that at various locations in its parking lot HOUSTON'S posted signs stating that surveillance cameras were present and at conspicuous locations on the restaurant building, placed surveillance cameras. These camera's, however, were not monitored and hence, anything they recorded or revealed was neither intended to be noticed nor acted upon by anyone, and, essentially HOUSTON'S intended them only to be useful, if at all, after the fact of a robbery, burglary, shooting or murder, and not as a security measure geared toward the prevention of crime and injury on its property.

16.    That HOUSTON'S did foresee the incidence of criminal activity on its property during the hours of darkness is evidenced by the fact that it did hire and employ golf cart drivers, (albeit drivers untrained in providing security or detecting criminal activity), to drive around the parking lot and to take patrons to and from their vehicles. Upon information and belief, this golf cart service was not in use on the night BRADLEY D. TIMPF was attacked, shot and murdered in HOUSTON'S parking lot because the golf cart was in need of maintenance. HOUSTON'S did not utilize any alternative means of providing a roving patrol or parking lot guest escort on the night BRADLEY D. TIMPF was attacked, shot and murdered.

17.    Further, that HOUSTON'S did foresee the incidence of criminal activity on its property

Page 5 of 7

during the hours of darkness is evidenced by the fact that it hired and paid off duty police officers, one per night, to patrol its parking area as well as the adjoining parking areas for Morton's Steakhouse and P.F. Chang's. Although it had been dark for several hours, there was no police presence or off-duty police officer patrolling the parking lot at 8:15 pm, the approximate time BRADLEY D. TIMPF was attacked, shot and murdered. The off-duty police officer was not required to report for duty until 9:00 pm - which, on this night, was at the very least, 45 minutes too late.

18.    That HOUSTON'S knew or should have known that its parking lot lighting was insufficient and inadequate to serve any kind of safety or security purpose, is evidenced by the fact that within a few days following the attack, shooting and murder of BRADLEY D. TIMPF, HOUSTON'S did prune its trees and palms so that the lighting fixtures above them would not be obscured to the grounds below.

19.    HOUSTON'S knew or should have known that its lighting, the absence of any trained guards, security officers or any security presence during all of its hours of operation after dark, and the absence of any randomly patrolling trolley or golf cart, and absence of valet parking services, rendered its parking lot premises unsafe and dangerous and exposed its patrons and invitees to an unreasonable risk of harm, as they are required to self-park and retrieve their cars in a large, dimly lit parking lot which has several, easily accessible and unenclosed remote areas, which foster easy ingress and egress to persons intending to initiate and then needing to flee, a crime scene.

20.    As a direct and proximate result of the foregoing acts and omissions of HOUSTON'S, BRADLEY D. TIMPF was attacked, shot and murdered while walking to his car in the

LAW OFFICES HAGGARD, PARKS, HAGGARD & LEWIS, P.A.

FIRST FLOOR, 330 ALHAMBRA CIRCLE, CORAL GABLES, FLORIDA 33134 • TELEPHONE (305) 446-5700

parking lot of HOUSTON'S restaurant in North Miami Beach and his Estate and survivors have suffered and will continue to suffer damages into the future, including as the applicable law may provide:

a.   Past and future mental pain and suffering of CONRAD TIMPF and LINDA TIMPF, who are the parents of BRADLEY D. TIMPF;

b.   The prospective net accumulations of the Estate of BRADLEY D. TIMPF;

c.   The expense of medical care and funeral arrangements due to the death of BRADLEY D. TIMPF; and

d.   Any and all other damages which the applicable law allows.

## Demand for Jury Trial

Plaintiff demands a trial by jury of all issues triable as of right by jury.

**WHEREFORE**, Plaintiff demands judgment against HOUSTON'S together with interest and costs and any further relief deemed appropriate by this Court.

DATED this 16Th day of APRIL, 2007.

HAGGARD, PARKS, HAGGARD & LEWIS, P.A.
330 Alhambra Circle, 1st Floor
Coral Gables, FL 33134
Tel:   305/446-5700
Fax:   305/446-1154

By _____
WM. ANDREW HAGGARD
Florida Bar No. 104430
JEANNETE C. LEWIS
Florida Bar No. 987565

Page 7 of 7




IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CONRAD TIMPF, as Personal Representative
of the Estate of BRADLEY D. TIMPF, Deceased,

**07-10918 CA 24**

               Plaintiff,

vs.

HILLSTONE RESTAURANT GROUP, INC., a
Delaware corporation d/b/a Houston's Restaurant,

               Defendant.

_____/

## NOTICE OF SERVICE OF PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT HILLSTON RESTAURANT GROUP, INC.

Plaintiff, CONRAD TIMPF, propounds the following Interrogatories to the Defendant,

HILLSTONE RESTAURANT GROUP, INC. to be answered under oath, within its knowledge

or that of its agents and/or attorneys within the time provided by and in accordance with the

applicable Florida Rules of Civil Procedure.

WE HEREBY CERTIFY that the original and one copy of the foregoing was served with the
Complaint on the Registered Agent for HILLSTON RESTAURANT GROUP, INC.

              HAGGARD PARKS HAGGARD & LEWIS, P.A.
              330 ALHAMBRA CIRCLE, FIRST FLOOR
              CORAL GABLES, FL 33134
              Tel:   (305)446-5700
              Fax:  (305) 446-1154

BY: _____
     JEANNETE C. LEWIS     FBN 987565
     Wm. ANDREW HAGGARD  FBN 104430



# PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANT HILLSTONE RESTAURANT GROUP, INC.

*Definitions:*

A.   *In answering these Interrogatories you shall furnish all such information as is available or known to you and all of your servants, employees, representatives, agents, including attorneys. Should you claim privilege, set forth in detail in your answers hereto the grounds for such claim, and the general nature of the information as to which you claim a privilege. "YOU" and/or "DEFENDANT" and/or "HOUSTON'S NORTH MIAMI BEACH" means and includes HILLSTONE RESTAURANT GROUP, INC., its subsidiaries, servants, employees, representatives, agents, attorneys, successors or predecessors in interest.*

B.   *As used herein, the term "DESCRIBE" means comprehensive, full, fair, frank, complete, accurate, and detailed descriptions of the matter inquired of.*

C.   *As used herein, the term "DOCUMENTS" means: all manner of written, typewritten, printed or recorded material whatsoever, including any graphic, mechanical or oral records or recordings of any kind, correspondence, letters, telegrams, memoranda, records of meetings or conferences, contracts, agreements, reports, checks, statements, receipts, returns, summaries, tickets, drafts, interoffice and intra office communications, offers, notations of conversations, records of telephone calls or meetings, printed matter, computer print-outs, teletypes, telefax, invoices, pictures, blueprints, schematics, tape recordings, transcriptions of records, video recordings, logbooks, business records and all drafts, alterations, modifications, changes and amendments of any of the foregoing, of which you have knowledge or which are now or were formerly in your actual or constructive possession, custody or control.*

D.   *Throughout these Interrogatories, whenever there is a request to identify or state identity of a document, provide as to such document the following information:*
1.   *The date of its preparation;*
2.   *The name, title and address of each author and signatory;*
3.   *The name, title and address of each addressee and each other person receiving a copy thereof;*
4.   *Its present custodian and location; and*
5.   *Its title and/or all identifying or categorizing designations.*

E.   *Whenever in the Interrogatories there is a request to identify or provide or state the identity of a person, provide as to each such person the following information:*
1.   *His or her name;*
2.   *His or her present or last known address;*
3.   *His or her present business address or business telephone, name of employer, and job title;*
4.   *His or her status or relationship with each of the parties to this action.*

F.   *Identify each person other than the signatory to the answers to these Interrogatories who has been consulted in connection with, or who has provided information or assistance concerning the answer to any Interrogatory and provide separately, by Interrogatory number, the position or job title, together with a description of the nature of the consultation, or of the assistance or information provided.*

G.   *In the event you withhold from identification any document as privileged, you are requested to provide a list of the documents withheld and state the following information with respect to each document withheld:*
1.   *The date appearing on the document, and if it has no date, the date, or approximate date, on which it was prepared;*
2.   *The title, label, code number, or file number of the document;*
3.   *The name and current address of the person[s] who signed the document and, if it was not signed, the name and current address of the person[s] who prepared it;*
4.   *The name and current address of the person[s] to whom the document was directed and the person[s] to whom a copy of the document was directed;*

 

5.   A general description of the subject matter[s] to which the document relates;

6.   The name and current address of the person[s] present possession, custody, or control of the document; and,

7.   The grounds on which the document has been withheld.

H.   If you know that any document[s] falling within the scope of these requests has been destroyed or lost, or is unavailable for any reason, you are requested to produce a written list of any document[s] so unavailable, identifying each document as follows: the request[s] the document pertains to; date; addressor's or author's name, title and address; addressee's name, title and address; the name and address of every other person to whom the document was sent or shown; the subject matter of the document; the general character of the document; as nearly as possible, the exact content of the document; and the reason for its destruction or unavailability.

I.   The term "HILLSTONE" and/or "HOUSTON'S" will be used to refer to the Defendant HILLSTONE RESTAURANT GROUP, INC., when appropriate.

J.   The term "date of this incident" or "subject incident" will be used to refer to December 10, 2006, the date on which Bradley D. Timpf was shot and killed in the parking lot of the Houston's Restaurant in North Miami Beach, Florida.

--------------------------------------------------------------------------------------------------

1.   What is the name and address of the person answering these interrogatories and, if applicable, the person's official position or relationship with HILLSTONE RESTAURANT GROUP, INC.?

Answer:

2.   Identify the type of tenancy or fee interest, whatever the case may be, that Defendant has in the premises known as Houston's located at 17355 Biscayne Blvd., North Miami Beach, Florida. State the name of the fee simple owner, landlord and tenant of the premises and the relationship of Defendant to such owner, landlord and/or tenant.

Answer:

3.   What is the name and address of the entity that managed and/or operated the premises known as Houston's located at 17355 Biscayne Blvd., North Miami Beach, Florida on December 10, 2006 and currently, if different?

Answer:



4.   What is the name and address of all entities and persons who were responsible as of December 10, 2006 for exercising control over the parking lot area at Houston's North Miami Beach? By "control" we mean decision making regarding the scheduling and oversight of maintenance, use, security, resurfacing, landscaping, gardening, painting, striping, signage, lighting, etc.

Answer:

5.   Regardless of whether they were operational and actually in use at the time Brad Timpf was shot on December 10, 2006 in the parking lot of Houston's, identify and describe any and all security devices and security plans and/or measures (ie: use of security guards, mandatory patrol schedules, and checkpoints, etc.) that were present and/or in place as of that date at and for the Houston's North Miami Beach premises, including in the parking lot area.

Answer:



6.      Of the security devices and security measures that were present and/or in place as of December 10, 2006, identify and describe which, if any of them, were actually utilized on December 10, 2006 at the Houston's North Miami Beach premises and further, which were present and actually utilized between the hours of 5pm and 9 pm that evening.

        Answer:

7.      Of the security devices and security measures that were present and/or in place as of December 10, 2006 but which were **not** operational or in use on that date, and specifically not operational and in use at the time Brad Timpf was shot, state in detail why such devices and measures were not operational or in use.

        Answer:



8.   As of December 10, 2006, state whether Houston's North Miami Beach had a security protocol or plan and if so, describe it in detail and identify any and all documents which outline, contain, set forth or otherwise memorialize that plan.

     Answer:

9.   Describe in detail any written or verbal arrangement or practice of or  between Houston's North Miami Beach and the adjacent restaurants (currently Morton's Steakhouse and P.F. Chang's) regarding the any aspect of the parking lot areas fronting those restaurants. Specifically describe any arrangement or practice regarding the use and allocation of the parking areas, the provision of security services, use of security guards, hiring of outside security contractors or personnel, use of valet parking, use of signage, scheduling of lighting, landscaping and other maintenance, and use of security devices, etc.

     Answer:



10.   Please list and describe any and all written and verbal contracts or agreements with security companies, security personnel, local police agencies, and the like, which were in effect on December 10, 2006 and which pertained to or included providing security services or security devices for the parking lot area for Houston's North Miami Beach.

    Answer:

11.   Provide the name and last known address of each person, firm or corporation providing security at or for the benefit of Houston's North Miami Beach on the date of the subject incident and state who was responsible for paying that entity or personnel and whether that same entity and/or personnel is/are still currently performing security duties at Houston's North Miami Beach.

    Answer:

12.    Within the Defendant company, and starting with the lowest security position at the Houston's premises in North Miami Beach, list and describe the corporate hierarchy (include job titles and the names and addresses of personnel currently holding those positions) as it relates to security issues and practices at Houston's restaurants, and specifically to Houston's North Miami Beach.

Answer:

13.    As of December 10, 2006 had the Defendant, or any entity on its behalf supplied security personnel working at the subject Houston's North Miami Beach premises with specific written job descriptions, security manuals, training manuals, and/or other written materials relating to the provision and implementation of security on the subject premises?  If so, describe the materials provided.

Answer:



14.    List the names and addresses of all persons who are believed or known by you, your agents, or your attorneys to have any knowledge concerning any of the issues in this lawsuit, and specify the subject matter about which the witness has knowledge.

Answer:

15.    Have you heard or do you know about any statement or remark made by or on behalf of any party to this lawsuit, other than your self, concerning any issue in this lawsuit? If so, state the name and address of each person who made the statement or statements, the name and address of each person who heard it, and the date, time, place, and substance of each statement.

Answer:

 

16.     State the name and address of every person known to you, your agents, or your attorneys who has knowledge about, or possession, custody, or control of, any model, plat, map, drawing, motion picture, videotape, or photograph, pertaining to any fact or issue involved in this controversy; and describe as to each, what item such person has, the name and address of the person who took or prepared it and the date it was taken or prepared.

        Answer:

17.     Please list the names of all the managers, general managers and supervisors of the Houston's North Miami Beach premises as of December 10, 2006 and indicate which one(s) were on duty at the time of this incident. If any of these individuals are no longer employed by you, please list their last known address and telephone number.

        Answer:



18.     Please describe the policies and procedures in effect on the date of this incident, for monitoring the parking lot adjacent to Houston's North Miami Beach.

        Answer:

19.     Do you contend that Bradley Timpf was negligent or that he did or failed to do anything that was a contributing legal cause of the damages claimed?  If so, what specifically do you contend he did or did not do which was a contributing legal cause of the damages sustained?

        Answer:



20.   Do you contend any person or entity other than you is or may be liable in whole or in part for the claims asserted against you in this lawsuit? If so, state the full name and address of each such person or entity, the legal basis for your contention, the facts or evidence upon which your contention is based and whether or not you have notified each such person or entity of your contention.

Answer:

21.   State the facts upon which you rely for each affirmative defense in your answer.

Answer:



22.     State the name and address of all persons and entities who provided security services in
        the parking lot of Houston's North Miami Beach between 5:00 pm and 9:00 pm on
        December 10, 2006.

        Answer:

23.     State whether the artificial lighting conditions at the Houston's North Miami Beach
        parking lot is the same today as it was on the date of the subject incident, December 10,
        2006.  If not, state how the artificial lighting conditions have changed; the reason why the
        lighting conditions were changed; the name, address and employer of the person
        recommending the change in lighting condition; and the name, address and employer of
        the person authorizing the change in lighting condition; and the name and address of the
        individuals and/or company who performed the lighting change(s).

        Answer:



24.   State whether the Defendant, its employees, agents and subsidiaries, has ever contracted with a security company to provide security for the exterior of Houston's North Miami Beach (including parking lot) at any time during the five (5) prior to December 10, 2006. If so, state the name,  address and telephone number of the security company(ies).

      Answer:

25.   Has anyone on behalf of Houston's North Miami Beach ever employed, contracted or arranged for any off-duty police officers to serve as security personnel on the defendant's premises known as Houston's North Miami Beach at any time during the five (5) years preceding the December 10, 2006 incident?  If so, state the date off-duty police officers were first utilized for security purposes on the Defendant's premises; the reasons why the Defendant employed off-duty police officers; the name and address of the person recommending the employment of these off-duty police officers;  the name and address of the person authorizing the employment of these off-duty police officers; and the address of the police department which was used.

      Answer:



26.     State whether in the five (5) years prior to December 10, 2006 the Defendant, its
        employees, agents, predecessor companies, or subsidiaries, ever employed any company
        to perform a security survey, report, analysis and/or security assessment for the benefit of
        the Defendant, its subsidiaries and/or predecessor companies, concerning the Houston's
        Restaurant in North Miami Beach or for the area associated with P.F. Chang's at 17455
        Biscayne Blvd. If so, give the name and address of the security company, the date the
        report was prepared, the reason for requesting the survey, and the name, address and
        phone number of the person in possession of the survey.

        Answer:

27.     Has this Defendant or its predecessors to its knowledge ever, within the past five (5)
        years, had a security survey, report or analysis done for any of its restaurants? If so,
        which ones and why?

        Answer:



28.   Describe in detail how the incident described in the Complaint happened, including all actions taken by the Defendant to prevent the incident.

Answer:

29.   State the name, address, and job title of the person or persons with most knowledge of:

a.     the everyday operation of Houston's at North Miami Beach, FL;

b.     training of security personnel;

c.     purchase of security equipment, ie: surveillance cameras, signage, lighting;

e.     job assignments and scheduling of security personnel.

Answer:

30.   Please state if Defendant or any of its predecessor companies, has ever been a Defendant, in a lawsuit alleging negligent security other than the present matter; and, if so, state the nature of the action, and the date and court in which such suit was filed.

      Answer:

I HAVE READ THE FOREGOING ANSWERS TO PLAINTIFFS' INTERROGATORIES AND DO SWEAR THAT THEY ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

_____

AFFIANT

_____

PRINTED NAME

STATE OF _____   )
                             )SS
COUNTY OF _____      )

BEFORE ME, the undersigned authority, personally appeared _____

who being duly sworn, deposes and says that the Answers to the Plaintiffs' Interrogatories

attached hereto are true to the best of his/her knowledge, information and belief.

SWORN TO AND SUBSCRIBED before me this ___day of _____, 2007.

_____

NOTARY PUBLIC, State of Florida At Large

☐   Personally known by me, or
☐   Produced identification:

_____

Type of Identification Produced

MY COMMISSION EXPIRES:




IN THE CIRCUIT COURT FOR THE 11TH
JUDICIAL CIRCUIT IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. _____ **07-10918 CA 24**

CONRAD TIMPF, as Personal Representative
of the Estate of BRADLEY D. TIMPF, Deceased,

                    Plaintiff,

vs.

HILLSTONE RESTAURANT GROUP, INC., a
Delaware corporation d/b/a HOUSTON'S,

                    Defendant.
_____/

## NOTICE OF SERVICE OF PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT, HILLSTONE RESTAURANT GROUP, INC.

Pursuant to the applicable Florida Rules of Civil Procedure, Plaintiff, CONRAD TIMPF requests

the Defendant, HILLSTONE RESTAURANT GROUP, INC. to produce the following documents and

items within the time set forth in the applicable Rule, and as grounds therefor, would show that these

items are relevant and material to issues in the above-styled case, are not privileged and/or work product,

and that these items are otherwise unavailable to the Plaintiff.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the a true and correct copy of the foregoing was served with the
Complaint on the Registered Agent for HILLSTON RESTAURANT GROUP, INC.

HAGGARD PARKS HAGGARD & LEWIS, P.A.
330 ALHAMBRA CIRCLE, FIRST FLOOR
CORAL GABLES, FL 33134
Tel:    (305)446-5700
Fax:    (305) 446-1154

BY: _____
JEANNETE C. LEWIS FBN 987565
Wm. ANDREW HAGGARD FBN 104430

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO
## HILLSTONE RESTAURANT GROUP, INC.

1.   Any and all documents identified or described in response to Plaintiff's First Set of Interrogatories to Hillston Restaurant Group, Inc.

2.   Any and all documents in the possession of this Defendant, its subsidiaries, agents and employees relating to any security procedures, security devices and/or security services that were utilized or required to be utilized, on December 10, 2006 at the Houston's Restaurant located at 17355 Biscayne Blvd., North Miami Beach, Florida. This request includes contracts, letters of agreement, letters, memos, employee manuals, training, security, and operating manuals and handbooks.

3.   To the extent not produced in response to **Request No. 1** above, any and all contracts, including writings relating to those contracts, which were in effect on December 10, 2006 with any security service, agency, or person, including the North Miami Beach Police Department, its officers or employees, for the provision of security services at Houston's Restaurant on North Miami Beach located at 17355 Biscayne Boulevard, North Miami Beach, Florida. This request includes, but is not limited to, the parking lot, adjacent and surrounding parking lot areas of P.F. Chang's and Morton's Steakhouse, and/or anywhere in, on or around the perimeter of, the area where Houston's Restaurant in North Miami Beach is located.

4.   Any and all contracts with third parties for the provision of security services as described in item number 3 above that were in effect at any time within the five (5) years prior to December 10, 2006.

5.   Any and all reports, evaluations or other memoranda produced or developed from any security audits, surveys, or evaluations performed by defendant or any outside parties prior to the date of the subject incident, including but not limited to reports by former owners, tenants, former tenants, and/or employees which relate to security, the need for security.

6.   Any and all internal memoranda or correspondence by and between Defendant, its agents, servants, contractors, employees and insurers that were issued or received by Defendant, its agents and employees, at any time between December 10, 2001 and December 9, 2006 that critiqued, referred to or made suggestions or comments about the security measures used or to be used at the Houston's Restaurant at 17355 Biscayne Boulevard, North Miami Beach, Florida.

7.   To the extent not produced in response to any Request above, any and all security manuals, brochures, memoranda, guides, periodicals or written policies and/or procedures pertaining to landscaping maintenance, exterior lighting maintenance and exterior security services for the Houston's Restaurant at North Miami Beach - 17355 Biscayne Blvd., North Miami Beach, Florida, which were in effect on the date of the subject

incident and/or at any time in the five years preceding the subject incident.

8. Copies of any and all complaints, incident reports and/or any police reports in Defendant's possession generated as a result of any crimes against persons at or adjacent (meaning at PF Chang's and Morton's Steakhouse) to Houston's Restaurant located at 17355 Biscayne Blvd., North Miami Beach, Florida, that were for incidents between December 10, 2001 and December 10, 2006.

9. Any and all documents, correspondence, memoranda or agreements, exchanged by or between Defendant, its employees, servants and agents on the one hand and the adjacent businesses (PF Chang's and Morton's Steakhouse) and/or their owners or managers, contractors, maintenance companies, and security companies, on the other, which relate to security, (ie: the use of outside security companies or police officers, the desirability for security, the effectiveness of existing security and any occurrences in and around the parking lots of the three restaurants - Houston's, PF Chang's and Morton's Steakhouse), which were issued or exchanged at anytime in the five (5) years preceding the December 10, 2006 incident involving Bradley D. Timpf.

10. Any and all blueprints, architectural drawings, maps, charts, aerial photographs, ground photographs, videotapes, property survey's and/or other documentary evidence depicting the legal boundaries of Houston's parking lot at any time in the year preceding the subject incident which occurred on December 10, 2006.

11. Any and all photographs and video tapes or digital recordings, surveillance footage and the like, that were taken by or on behalf of Defendant on December 10 and 11, 2006 depicting Bradley Timpf inside or outside of the restaurant building, Bradley Timpf's vehicle, the parking lot, the incident scene, persons on the scene, the medical care given to Bradley Timpf, the incident site or any of the parties questioned or potentially involved in the attack and aftermath of the attack on Bradley D. Timpf in the Houston's parking lot.

12. A copy of any and all photographs of Bradley Timpf and / or his vehicle on December 10, 2006.

13. Any and all reports or documents in Defendant's possession relating to or arising out of the incident involving Bradley Timpf on December 10, 2006. This includes but is not limited to: police reports, incident reports, reports created by Morton's Steakhouse or PF Chang's ownership or management, photographs of the scene or site, and any documents, reports or lists produced by Houston's North Miami Beach to the North Miami Beach Police or FBI pursuant to subpoena.

14. A copy of each and every credit card or debit card receipt created at any time from 7:30 to 9:00 pm on December 10, 2007 for patrons of Houston's North Miami Beach. This includes but is not limited to the credit card/debit card receipt for Bradley Timpf.

 

15. Any document, video, depiction, information, statements, etc. that Defendant, its agents, servants and employees shared, divulged or produced to law enforcement officers and agencies relative to the investigation of the attack, shooting and murder of Bradley Timpf at Houston's North Miami Beach on December 10, 2006.

16. A copy of the title to, registration, proof of ownership, maintenance records, and work orders and repair invoices and records and any other document related to the golf carts used to transport patrons of Houston's North Miami Beach in and around December 10, 2006 (regardless of whether or not such cart(s) were in use on December 10, 2006).

17. Any and all records and daily activity logs, incident logs, and security logs and time sheets and/or any other correspondence, notes or memos, of the Defendant's security personnel (whether they be Defendant's employees or outside security personnel) for the Houston's Restaurant in North Miami Beach (the entire premises including outside areas) from December 10, 2005 through December 11, 2006.

18. The time logs or duty roster listing all persons on duty at Houston's NMB at any time between 4:00 pm on December 10, 2006 and the close of business on December 10 or 11, 2006.

19. The daily activity logs, time sheets, location logs, check-in sheets and or any other correspondence, notes or memos that deal with the activities of the security guards/personnel on the evening of December 10, 2006. Please provide these documents for all the security guards/personnel that were on duty at the time of this incident. The Defendant may limit the request to the eight (8) hours prior to the time of the incident (noon) and four hours subsequent to the time of the incident which is believed to be at or around 8:15pm - (midnight).

20. A copy of any statement, bill, invoice, work order, or other document pertaining to landscaping maintenance and/or tree trimming performed in and around the parking lot of Houston's North Miami Beach at any time between December 10, 2001 and the present.

21. A copy of any statement, bill, invoice, work order or other document pertaining to lighting and maintenance of the lighting in the parking lot of Houston's North Miami Beach at any time between December 10, 2001 and December 10, 2006.

22. Any and all documents which describe the ownership, use and/or maintenance of the parking lot areas for Houston's, Morton's Steakhouse, and PF Chang's in North Miami Beach.

23. Any and all documents which would reflect any changes and/or alterations made by or on behalf of the Defendant to the physical property of Houston's Restaurant and its parking lot located at 17355 Biscayne Blvd., North Miami Beach, Florida that have taken place since the incident. This includes but is not limited to: the placement of a security booth, landscaping, installation of additional lighting, relocation of outside cameras and signage



and/or any other type of change or alteration to the physical appearance of the exterior of the North Miami Beach Houston's Restaurant and adjacent parking areas.

24.     Copies of the complete personnel files, including employment applications, of each and every employee at Houston's NMB who was responsible for or assigned to operate the golf carts in the parking lot (regardless of whether or not they were operated on December 10, 2006) and of each and every employee at Houston's NMB who was responsible for providing security for the exterior of the Houston's NMB premises, on December 10, 2006.

25.     Please produce any and all manuals, procedures, guidelines, brochures, check lists any other correspondence, and/or memorandum detailing the training, administration and or operation of security at the Defendant's premises that were in effect on December 10, 2006.

26.      Please produce any and all manuals, procedures, guidelines, brochures, check lists any other correspondence, and/or memorandum detailing the training, administration and or operation of security at the Defendant's premises that were in effect at any time in the five (5) years prior to the date of this incident December 10, 2006.

27.     To the extent they are different than that which was in effect or used on December 10, 2006, please produce any and all manuals, procedures, guidelines, brochures, check lists and any other type correspondence, and/or memorandum detailing the training, administration and or operation of security at the Defendant's premises that were in effect at any time subsequent to December 10, 2006.

///
///



IN THE CIRCUIT COURT OF THE 11ᵀᴴ
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION
CASE NO.: _____ 07-10918 CA 24

CONRAD TIMPF, as Personal Representative
of the Estate of BRADLEY D. TIMPF, Deceased,

        Plaintiff,

vs.

HILLSTONE RESTAURANT GROUP, INC., a
Delaware corporation d/b/a HOUSTON'S,

        Defendant.
_____/

## NOTICE OF TAKING DEPOSITION

    PLEASE TAKE NOTICE that counsel for the Plaintiff will take the following deposition upon oral examination before **Alice Teslicko of Reporting Resources, Inc.,** Notary Public, or any other notary public or officer authorized by law to take depositions in the State of Florida. The deposition will continue from day to day until completed. The depositions are being taken for the purpose of discovery, for use at trial, or both of the foregoing, or for such other purposes as are permitted under the applicable rules.

    **NAME**

General Manager on December 10, 2006 of Houston's - North Miami Beach.

    **DATE & TIME**:

Wednesday, June 13, 2007 at 9:00 a.m.

    **LOCATION**:

Law Offices of Haggard, Parks, Haggard & Lewis, P.A
330 Alhambra Circle, First Floor
Coral Gables, FL 33134

 

I HEREBY CERTIFY that a true and correct copy of the foregoing was served with the Summons and Complaint.

HAGGARD, PARKS, HAGGARD & LEWIS, P.A.
330 Alhambra Circle, First Floor
Coral Gables, FL 33134
Phone: 305-446-5700
Fax: 305-446-1154

BY: _____
WM. ANDREW HAGGARD        FBN 104430
JEANNETE C. LEWIS              FBN 987565



**07-21130**

⚖JS 44   (Rev. 11/05)

# CIVIL COVER SHEET

**CIV-MARTINEZ**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| CONRAD TIMPF, as Personal Representative of the Estate of BRADLEY D. TIMPF, Deceased | HILLSTONE RESTAURANT GROUP, INC., a Delaware corporation d/b/a HOUSTON'S |

**MAGISTRATE**
**BANDSTRA**

**(b)** County of Residence of First Listed Plaintiff **Broward**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
WM. Andrew Haggard, Esq./ Jeannete C. Lewis, Esq
Haggard, Parks, Haggard, & Lewis, P.A.
330 Alhambra Circle, 1st Floor, Coral Gables, FL 33134

Attorneys (If Known)
Gary Gorday, Esq., Vernis & Bowling of Miami, P.A., 1680 NE
135th Street, Miami, FL 33181

(d) Check County Where Action Arose: ✓ MIAMI- DADE   ☐ MONROE   ☐ BROWARD   ☐ PALM BEACH   ☐ MARTIN   ☐ ST. LUCIE   ☐ INDIAN RIVER   ☐ OKEECHOBEE HIGHLANDS

| II. BASIS OF JURISDICTION (Place an "X" in One Box Only) | III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff |
|---|---|

| II. BASIS OF JURISDICTION | | III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Cases Only) and One Box for Defendant | | | |
|---|---|---|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) | Citizen of This State | PTF ✓ 1 DEF ☐ 1 | Incorporated or Principal Place of Business In This State | PTF ☐ 4 DEF ☐ 4 |
| ☐ 2 U.S. Government Defendant | ✓ 4 Diversity (Indicate Citizenship of Parties in Item III) | Citizen of Another State | ☐ 2 ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 ✓ 5 |
| *Miami-07 CV 21130 JEM/TEB* | | Citizen or Subject of a Foreign Country | ☐ 3 ☐ 3 | Foreign Nation | ☐ 6 ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ✓ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)). | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

| V. ORIGIN (Place an "X" in One Box Only) | | | | | | |
|---|---|---|---|---|---|---|
| ☐ 1 Original Proceeding | ✓ 2 Removed from State Court | ☐ 3 Re-filed- (see VI below) | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judgment |

| VI. RELATED/RE-FILED CASE(S). | (See instructions second page): | a) Re-filed Case ☐ YES ✓ NO   b) Related Cases ☐ YES ☐ NO |
|---|---|---|
| | | JUDGE Michael Genden   DOCKET NUMBER 07-10918 CA 24 |

| VII. CAUSE OF ACTION | Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity): |
|---|---|
| | LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case) |

| VIII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ | CHECK YES only if demanded in complaint: JURY DEMAND: ✓ Yes ☐ No |
|---|---|---|---|

| ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE | SIGNATURE OF ATTORNEY OF RECORD | DATE 4/25/07 |
|---|---|---|

FOR OFFICE USE ONLY
AMOUNT 350 — RECEIPT # 958735 IFP